## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

KARUN N.  JACKSON,        )
URSULA D. JACKSON,      )
                       )
    PLAINTIFFS,       )
                       )
v.                        )     **CIVIL ACTION NO.:**
                       )     **CV-2016-0062**
BANK OF NEW YORK MELLON )
BANK OF AMERICA,  N.A.    )
SPECIALIZED LOAN SERVICES )
MERS
    DEFENDANTS.

## AMENDED COMPLAINT

Come now, the Plaintiffs, Karun Jackson and Ursula Jackson, by and

through their attorney of record and file their complaint against Bank of

New York Mellon[1], Bank of America, N.A., Specialized Loan Services, and

Mortgage Electronic Registration Systems in accordance with the Federal

Rules of Civil Procedure, and in support of said complaint states as follows:

## PARTIES

1.    The Defendants, Specialized Loan Services, Bank of America, and
Bank of New York Mellon[2] in this action are foreign corporations
doing business in Baldwin County Alabama, and are  "debt
collectors" as that term is defined by 15 U.S.C. § 1692a(6).

---

[1] The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificate
Holders of the CWABS, Inc., ASSET-BACKED CERTIFICATES, SERIES 2006-17

[2] The Bank of New York Mellon's complete and full listing as a Defendant is actually:  The Bank of New
York Mellon FKA The Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc.,
ASSET-BACKED CERTIFICATES, SERIES 2006-17.

2.    The Plaintiffs, Karun Jackson and Ursula Jackson, in this action are adult resident of Baldwin County, Alabama, and are "consumers" and/or persons affected by a violation of the FDCPA.

## JURISDICTION

3.    Jurisdiction is proper in this Court as the underlying action is based upon a contract executed in Baldwin County, Alabama. The action is brought regarding an attempted foreclosure instituted in Baldwin County, Alabama, and is in the nature of a complaint regarding that attempted foreclosure action. The action is brought to enforce the contractual remedies allowed in the mortgage document. The action seeks damages in contract and tort for the actions of the Defendants with respect to their servicing and attempted foreclosure on the loan in question.

## VENUE

4.    Venue is proper in this Court as the Plaintiffs are citizens of Baldwin County, all or substantially all of the wrongs complained of occurred in this county, and the property is situated in this county.

## STATEMENT OF FACTS

5.    Karun Jackson and Ursula Jackson bought the property located at 26235 Jackson Circle extension Daphne AL  36526. On August 28, 2006, the Jacksons bought their property and executed a mortgage loan and received and executed a mortgage with First Residential Mortgage Network Inc. and also signed a promissory note with First Residential Mortgage Network Inc.  The Mortgage contract provides for an escrow account for the taxes and insurance. The mortgagee is required to pay for the insurance and taxes from the escrow account.

6.    The Jacksons currently reside at 26235 Jackson Circle extension Daphne AL  36526.

2

7. The loan was allegedly later transferred and sold to Specialized Loan Services and Bank of New York Mellon although the Plaintiffs dispute the validity of the alleged transfer.

8. On November 8, 2015, Defendants improperly and wrongfully began foreclosure proceedings on the Jacksons property.  The mortgage governs acceleration and sets for the lenders remedies and provides that Lender shall give notice to the borrower prior to acceleration following borrower's breach of any covenant or agreement in this Security Instrument.  The Defendants or their agents[3] refused to engage in a legitimate and good faith mortgage foreclosure avoidance workout, accept the proper payments, inflated the amount due, and have threatened to foreclose on Plaintiffs without any basis to do so

9. The Jauregui Law Firm handled the attempted foreclosure sale.

10.  The Defendants began foreclosure proceedings on Plaintiffs' property on November 8, 2015 despite knowing that the Plaintiffs, the Jacksons claimed that they were not in default and that the attempted foreclosure sale was wrongful and invalid.

11. The foreclosure sale date was reported to the national credit bureaus and the Jacksons' credit was damaged as a result of the reporting of the foreclosure sale date which was invalid and wrongful.

12. The Jacksons, upon information and belief, contend that the alleged Assignments of the note and mortgage is defective, void, or otherwise unenforceable as to the security instrument in question in this case. None of the Defendants are the original lender. Federal law 1641(g)(1)(B) requires a new creditor to provide the date of transfer, which has not occurred.

13. The Jacksons contend that the attempted sale was wrongful, illegal, in violation of law and the documents governing the relationship between the Jacksons and the owners of the note and mortgage. Furthermore, the Jacksons allege that they were not behind in their

---

[3] Agency is a set of contractual, quasi-contractual and non-contractual fiduciary relationships that involve a person, called the agent, that is authorized to act on behalf of another (called the principal) to create legal relations with a third party

payments on the mortgage and that they were improperly defaulted and that the note was improperly accelerated.

14. The Jacksons contend that the foreclosing entity lacked standing or authority to initiate foreclosure proceedings on his property.

15. The Jacksons allege that the actions of the Defendants and its agents, employees and servants were wrongful and tortious.

16. The Jacksons allege that the actions of Defendants by improperly attempting foreclosure on their property is a violation of law, wrongful and tortious and that the Defendants had no authority to foreclose on his home or property, and that its actions constitute negligence, wantonness, abuse of process and slander of title.

17. As a direct result of the acts complained of the Jacksons have suffered great mental anguish, damage to his reputation, economic and emotional damages and claims from Defendants all damages allowable under the law.

18. In November 2012, the Jacksons sent a monthly payment to Defendants; however, Defendants refused the payment and returned it to the Jacksons without explanation.  After, the Jacksons called and inquired as to the returned payment, Defendants advised Jacksons that they were in default for failure to make payments, but could not explain why they were allegedly in default.  Moreover, Defendants advised the Jacksons that it would no longer accept payments from them and that Defendants would be turning over their account for foreclosure.  Prior to September 2012 Defendants accepted and cashed Plaintiffs monthly payments, but failed to properly apply them to his account pursuant to paragraph 2 of the mortgage contract.  From October 2012 until January 2014, Defendants returned payments to the Jacksons again also in violation of the mortgage contract.

19. Specifically, the July 2011, May 2012, August 2012, and September 2012 payments, as well as others, were cashed by Defendants but not applied at all to the Jacksons' account.

20. On November 8, 2015, Defendants improperly and wrongfully began foreclosure proceedings on the Jacksons' property.

4

21.  The Defendants purportedly began foreclosure proceedings on
Plaintiff's property on November 8, 2015 despite knowing that the
Plaintiff, the Jacksons, claimed that the attempted foreclosure sale was
wrongful and invalid, and that they were not in default at the time of
the acceleration.

22.  The foreclosure sale date which included false information related to
the alleged default on the indebtedness was published in the
newspaper in November 2015 and December 2015. Furthermore, said
false and inaccurate information related to the Jacksons' alleged
default was reported to the national credit bureaus and the Jacksons'
credit and reputation were damaged as a result of the reporting of the
foreclosure sale date and default which was invalid and wrongful.

23.  The Jacksons contends that the attempted sale was wrongful, illegal,
in violation of law and the documents governing the relationship
between the Jacksons and the owners of the note and mortgage.
Furthermore, the Jacksons alleges that they were not behind in their
payments on the mortgage and that they were improperly defaulted
and that the note was improperly accelerated.

24.  The Jacksons alleges that the actions of Defendants by improperly
attempting foreclosure on their  property is a violation of law,
wrongful and tortious and that the Defendant had no authority to
foreclose on their  home or property, and that its actions constitute
negligence, wantonness, abuse of process and slander of title.   As a
direct result of the acts complained of the Jacksons has suffered great
mental anguish, damage to his reputation, economic and emotional
damages and claims from Defendants all damages allowable under the
law.

25. In January 2013, the Consumer Financial Protection Bureau issued a
number of final rules concerning mortgage markets in the United
States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376
(2010).  Specifically, on January 17, 2013, the CFPB issued the Real
Estate Settlement Procedures Act (Regulation X) and the Truth in
Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 F.R.
10901 (Regulation Z) (February 14, 2013) and 78 F.R. 10695
(Regulation X) (February 14, 2013), which became effective on

January 10, 2014.  The Jacksons' mortgage loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b). The Defendants are subject to the aforesaid Regulations and do not qualify for the exception for "small servicers" as defined in 12C.F.R. § 1026.41(e)(4) or the exemption for a "qualified lender" as defined in 12 C.F.R. § 617.700.   The Jacksons are asserting a claim for relief against Defendants for breach of the specific rules under Regulation X as set forth below.   The Jacksons has a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## COUNT ONE
### NEGLIGENCE
### (BANK OF NEW YORK MELLON)
### (SPECIALIZED LOAN SERVICES)

26.   The Plaintiffs re-allege all prior paragraphs as if set out here in full.

27.   The Defendants negligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed by the Plaintiff, negligently caused his property insurance to be canceled, negligently defaulted the Plaintiff,  negligently attempted a foreclosure sale on Plaintiff's property, were negligent by failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those  bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; negligent by failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiff's loan account and failing to remove the   adverse reporting from Plaintiff's credit once he disputed the same.

28.   As a direct result of the said negligence, the Plaintiff was injured and damaged as alleged above and has suffered mental anguish, economic injury and all other damages allowed by law.

29.     As a result thereof, the Defendant is liable for all natural, proximate and consequential damages due to their negligence.

### COUNT TWO
### WANTONNESS
### (BANK OF NEW YORK MELLON)
### (SPECIALIZED LOAN SERVICES)

30.     The Plaintiff re-alleges all prior paragraphs as if set out here in full.

31.     The Defendant acted with reckless indifference to the consequences, and consciously and intentionally wrongfully serviced the loan made the basis of this suit, attempted to collect sums not owed by the Plaintiff, caused his property insurance to be canceled, defaulted the Defendant, attempted to conduct a foreclosure sale on Plaintiff' property, failed to make sure that information disseminated to others (including the national credit bureaus  and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; failed to properly train their employees on the   thorough investigation of disputed accounts; failed to properly train, and/or supervise their employees and agents with regard to the handling of the Jacksons' loan account and failing to remove the adverse reporting from the Jacksons' credit once he disputed the same.

32.     These actions were taken with reckless indifference to the consequences, consciously and intentionally in an effort to increase profits for the Defendant.

33.     The Defendant knew that these actions were likely to result in injury to the Plaintiff including financial and emotional injuries and mental anguish.

34.     As a proximate result of the Defendant's wantonness the Plaintiff was injured and harmed and suffered financial injury and emotional damage.

35.     As a result thereof, Defendant is liable for all natural, proximate and consequential damages due to its wantonness as well as punitive damages upon a proper evidentiary showing.


**COUNT THREE**
**UNJUST ENRICHMENT**
**(BANK OF NEW YORK MELLON)**
**(SPECIALIZED LOAN SERVICES)**


36.     The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

37.     The actions of the Defendant in attempting foreclosure on the home of the Plaintiff in violation of law resulted in Defendant being unjustly enriched by the payment of fees, insurance proceeds and equity in the home.

38.     As a result of the Defendant's unjust enrichment, the Plaintiff has been   injured and damaged in that the Plaintiff has been forced to pay charges that were illegal, wrong in character, wrong in amount, unauthorized, or otherwise improper under threat of foreclosure by the Defendant.

39.     The Plaintiff claim all damages allowable under law as a result of the Defendant's wrongful conduct and unjust enrichment.


**COUNT FOUR**
**WRONGFUL FORECLOSURE**
**(BANK OF NEW YORK MELLON)**
**(SPECIALIZED LOAN SERVICES)**


40.     The Plaintiff re-alleges all prior paragraphs as if set out here in full.

41.     Defendants wrongfully initiated and conducted a foreclosure proceeding against the Plaintiffs in violation of law.

42.  The foreclosure proceeding conducted on January 11, 2016 by the Defendants were either negligent, wanton or intentional, depending on proof adduced at Trial. The power of sale was exercised for a purpose other than to secure the debt owed by plaintiff, as the plaintiff was current on the debt at the time of the default and acceleration.

43.  As a result thereof, the Defendants are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages upon a proper evidentiary showing.

## COUNT FIVE
## SLANDER OF TITLE

## (BANK OF NEW YORK MELLON)
## (SPECIALIZED LOAN SERVICES)

44.  The Plaintiff re-alleges all paragraphs as if set out here in full.

45.  Defendant, in attempting foreclosure has caused a cloud to be placed on the title of the property of the Plaintiff.

46.  As the proximate cause of the Defendant's said slandering of the Plaintiff's title, he was caused to suffer injuries and damages and claims all damages allowable under law.

## COUNT SIX
## BREACH OF CONTRACT
## (ALL DEFENDANTS)

47.  The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

48.  The Plaintiff and his Lender entered into the standard Fannie Mae/Freddie Mac Uniform Instrument" mortgage agreement.

49.  The Defendants serviced the loan and breached the agreement by failing to comply with essential terms in paragraph 2 regarding the

application of payment and the notice requirements of paragraph 22 of the agreement.

50.   As a result of the defendant's breach of the mortgage contract, the Plaintiff was caused to suffer injuries and damages and claims all damages allowable under law.

51.   That paragraph 2 of the terms of the agreement entered into between Plaintiff and with First Residential Mortgage Network Inc. detail the application of payments.  That, as more fully described above, Defendants failed to apply regular monthly payments, supplemental monthly payments, in the proper manner according to the terms of the note and mortgage.   More specifically, Defendants never applied some payments at all to Jacksons' account even though Jacksons sent in the payment and it was deposited by Defendants.  Apparently, Defendants have misplaced or is unable to account for the funds from payments made or sent by Jacksons.  Moreover, numerous other payments made by Jacksons were returned to him by Defendants without reason or without explanation.  More specifically, for example, in November 2013, the Jacksons' payment was returned to them.

52.   That this misapplication of funds constitutes a breach of the mortgage contract and thus entitles the Jacksons to damages.

53. In addition, Defendants failed to send proper notices to the Jacksons as required by the mortgage contract. Even if the Jacksons are in default, Defendants failed to send a proper notice of default, a proper notice of intent to accelerate, and a proper notice of acceleration.   The contract terms related to notice are as follows:

> Lender shall give notice to Borrower **prior to acceleration** following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower by which the default must be cured; and (d); that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of

> Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument….

Accordingly, Defendants failed to comply with this provision of the mortgage contract and has therefore breached the contract.

54. Moreover, Paragraph 22 of the mortgage document gives the Plaintiff the right to bring an action to dispute the existence of a default and raise defenses thereto.  Accordingly, the Plaintiff exercises his right pursuant to paragraph 22 of the mortgage document and hereby challenges the existence of a default on his mortgage indebtedness.  As previously, discussed, the Plaintiff is not in default, has made payments every month as required by the mortgage and note and is not behind on his mortgage payments.

## COUNT SEVEN
## FRAUD

**(BANK OF NEW YORK MELLON)**
**(SPECIALIZED LOAN SERVICES)**
**(MERS)**

55. The Plaintiff adopts and re-alleges all prior paragraphs as if set out here in full.

56. The Defendant misrepresented that the loan was in default. Further, the Defendant made false and misleading representations, to wit: dissemination of inaccurate information regarding the loan account as being in default and dissemination of inaccurate information regarding the credit history and credit of the Plaintiff that was known to be false. Defendants also falsified documents and records related to the Jacksons mortgage loan and attempted to fraudulent transfer, sale or assign the loan by illegal and fraudulent means.

57. Said misrepresentations were made negligently and/or willfully and/or wantonly and/or fraudulently, and/or recklessly with the intent to induce the Plaintiff to act thereon and upon which the Plaintiffs did in fact act to their detriment.

58.     Plaintiff justifiably relied upon said representations made by
        Defendant and as a result of said reliance proceeded with the
        execution of the loan; at the time said representations were made the
        same were false and known by the Defendant to be false and/or were
        false and made by mistake with the intent for Plaintiff to rely thereon.

59.     As a proximate cause of the aforementioned fraudulent
        misrepresentations made by the Defendant, Plaintiff was proximately
        caused to suffer injury and damage.


## COUNT EIGHT
## PLACED IN A FALSE LIGHT
## (BANK OF NEW YORK MELLON)
## (SPECIALIZED LOAN SERVICES)

60.     Plaintiff adopts the above paragraphs as if fully set forth herein.

61.     In association with the servicing of the loan account Defendants held
        Jacksons up in a false light and made undesirable and negative
        character and credit reputation remarks on or about the Jacksons by
        either speaking or writing undesirable and negative character and
        reputation remarks about Jacksons which was offensive, untrue, and
        inaccurate, and which alleged Jacksons was behind on his debt
        serviced by Defendants, has a bad debt with Defendants.

62.     Defendants knew Jacksons was not in default on the account, as it was
        paid to date and as such, that there existed no basis in law or fact, for
        the Defendants to make offensive, untrue, and inaccurate reports
        regarding Jacksons.  Defendants knew this at the times they were
        reporting such information.

63.     Defendants held Jacksons up in a false light and made undesirable and
        negative and credit reputation remarks on or about Jacksons in the
        national credit reporting media and to his homeowner insurance
        carrier. Defendants provided this false information to third parties.

64.     The conduct Defendants was objectionable to the Jacksons and to any
        reasonable person.  Defendants' action was willful, reckless, wanton

and/or made with malice and resulted in Jacksons being unreasonably placed in a false light.

65. Due to Defendants' conduct, the Jacksons were caused to have negative credit reports, denied homeowners insurance, held up to public ridicule or shame, humiliated, made to suffer physically and mentally, and endure anguish.

WHEREFORE, PREMISES CONSIDERED, the Jacksons Pray for Judgment against Defendants in an amount to be determined by trier of fact.

## COUNT NINE

## DEFAMATION, LIBEL, SLANDER
## (BANK OF NEW YORK MELLON)
## (SPECIALIZED LOAN SERVICES)

66. Plaintiff adopts the above paragraphs as if fully set forth herein.

67. The Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding the Plaintiff and said statements have subjected the Plaintiff to the denial of credit by third parties, resulted in homeowner's insurance cancellation and harmed the Plaintiff's credit reputation.  As previously stated, the Plaintiff was current on his mortgage account and has made payments each and every month.  Accordingly, he was not in default.  Despite the Jacksons' account being current, Defendants published in the newspaper false information regarding his account being in default and false information regarding its right to conduct a foreclosure sale on the Jacksons' property.

68. Said false and defamatory statements have harmed the reputation of the Jacksons and/or deterred third persons from associating with the Jacksons.

69. The Defendant communicated to credit reporting agencies and/or other third parties, false information that Jacksons defaulted on the loan and was in foreclosure, disseminated and imputed false and

misleading credit history and worthiness information concerning the Jacksons.

70.   Defendants published such defamatory and libelous information in the Northport Gazette newspaper.

71.   Said communications were false in that Plaintiff was not indebted to the Defendant in the amount reported, and Plaintiff was not delinquent as reported by the Defendant, and Plaintiff is the legal and rightful owner of the mortgage note.

72.   At the time said communications were made, Defendants knew, or should have known, of the falsity of the communication or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

73.   As a result of the intentional communication to third parties of false information, the Jacksons were caused to suffer injury to his reputation in the eyes of the community and the public and was subject to ridicule.

74.   Said communications were oral and/or written.

75.   As a proximate consequence of the Defendants' acts, the Jacksons were caused to be injured and damaged.

76.   Defendants published such defamatory and libelous information. Defendants knew the Jacksons were not in default on the account, as it was paid to date and as such, that there existed no basis in law or fact, for the Defendants to make offensive, untrue, and inaccurate reports regarding the Jacksons.  Defendants knew this at the times they were reporting such information.  Furthermore, Defendants published in the local newspaper in Baldwin County Alabama the false information of the default on the loan in the foreclosure sale notice.  This foreclosure sale notice states that the Jacksons' loan is in default and in foreclosure.  Defendants knew this information was inaccurate at the time it published this notice in the local paper, and the published false information harmed the Jacksons' reputation and character.  As a result, the Jacksons' suffered damages of their reputation which

negatively affected their credit and their business causing monetary losses.

77.   Said communications were false in that Plaintiff were not indebted to the Defendant in the amount reported, Plaintiff was not delinquent as reported by the Defendant, and Defendant is not the legal and rightful owner of the mortgage note.

78.   At the time said communications were made, Defendants knew, or should have known, of the falsity of the communication or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

79.   As a result of the intentional communication to third parties of false information, the Jacksons were caused to suffer injury to their reputation in the eyes of the community.

### COUNT TEN:
### VIOLATIONS OF TRUTH IN LENDING
### (SPECIALIZED LOAN SERVICES)

80.   The Jacksons re-allege and adopt the above paragraphs as if fully set forth herein and also asserts the following:

81.   Defendants violated the Federal Truth in Lending Act.

82.   The Jacksons institute this action for actual damages, statutory damages, attorney's fees, and the costs of this action against Defendants for multiple violations of the Truth in Lending Act, 15 U.S.C. §1601et seq. , (hereinafter TILA),and Federal Reserve Board Regulation Z, 12 C.F.R. § 226,promulgated pursuant thereto.

83.   This complaint is solely for monetary damages pursuant to15 U.S.C. § 1640. Under 15 U.S.C. § 1640(a), it is not necessary to allege or to prove actual damages to recover statutory damages.

84.Defendants, are covered by the Act as it regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is

payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making defendant a creditor within the meaning of TIL, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

85. Defendants did not provide a proper copy of the notices required by the Act to the Jacksons.   The disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of Truth in Lending and Regulation Z in the following and other respects:  (a). By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C.§ 1638(b) and Regulation Z § 226.17(b).  (b). By failing to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z § 226.17(a).  (c). By failing to include in the finance charge certain charges imposed by defendant payable by plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 226.4, thus improperly disclosing the finance charge in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z § 226.18(d). Such amounts include, but are not limited to the attorney fees and late fees, 15 U.S.C. § 1605(a), Regulation Z§ 226.4(a).

86. The regulations require that the notice shall identify the transaction or occurrence and clearly and conspicuously disclose the following: The retention or acquisition of a security interest in the consumer's principal dwelling. The consumer's right to rescind, as described in paragraph (a)(1) of this section. How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.  The effects of rescission, as described in paragraph (d) of this section.  The date the rescission period expires. (See Reg. Z §§ 226.15(b)(5) and 226.23(b).

87. By charging "attorney fees" and other "fees" not authorized by the mortgage contract, Defendants has made unauthorized charges and failed to disclose these charges in violation of the Act.  In this case, Defendants added fees to the Jacksons' account in September 2011 which are referenced in the notice of default.  Moreover, once the account was turned over to the attorney for foreclosure in October 2013, additional fees were improperly added to the account.  Each

time the sale was published in the newspaper up to and including December 2015, Defendants added additional and unauthorized fees to the Jacksons' account balance.

88. By calculating the annual percentage rate (APR) based upon improperly calculated and disclosed finance charges and amount financed, 15 U.S.C. § 1606, Regulation Z§ 226.22, Defendants understated the disclosed annual percentage rate in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z § 226.18(c).

89. That the Defendants have been improperly amortizing the loan, and has failed to provide proper disclosures to the Jacksons. Defendants failed to send proper monthly statements to the Jacksons in violation of the Act.

90. By reason of the aforesaid violations of the Act and Regulation Z, Defendants  is liable to Jacksons in the amount of twice the finance charge, actual damages to be established at trial,  and attorney's fees and costs in accordance with 15U.S.C. § 1640 for violations of Federal Truth in Lending Act.

## COUNT ELEVEN:
## VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)
## (SPECIALIZED LOAN SERVICES)

91.    The Jacksons re-allege and adopts the above paragraphs as if fully set forth herein and also asserts the following:

92.    Defendant, SLS, is a loan "servicer"[4] of the Plaintiff's "federally related mortgage loan" as those terms are defined in the RESPA, 12 U.S.C. § 2602(1) and 12 U.S.C. § 2605(i)(2).  Defendants violated the Real Estate Settlement Procedures Act (REPA) by failing to acknowledge or respond to Jacksons' Qualified Written Request (QWR).  Defendant violated the Real Estate Settlement Procedures Act (REPA) by failing to acknowledge or respond to Jacksons'

---

[4] A servicer of the loan collects payments from the borrower, sends payments to the lender and handles administrative aspects of the loan.

Qualified Written Request (QWR) within in the time provided by federal law.

93. The Jacksons made a Qualified Written Request pursuant to RESPA to Defendants on October 29, 2015 and December 15, 2015 which was sent by certified mail.  It was signed for by Defendants acknowledging receipt of the QWR.  Defendants never acknowledged receipt of the QWR request and never responded to it.   Defendants' failure to acknowledge and properly respond to the QWR request is a violation of RESPA or the Dodd-Frank Act.  Because of said violations of said acts, the Jacksons were damaged because they were not informed of the information regarding their loan.  Because the Defendants failed to give this information to the Jacksons, they were not able to stop the foreclosure on their home.  Accordingly, the Jacksons are entitled to damages from the Defendants.   Plaintiffs suffered damages by Defendants' failure to comply with the RESPA law because they were unable to get a proper accounting of the fees and charges owed on the account to cure any alleged default and as a result a foreclosure sale was set.

## COUNT TWELVE
## FAIR CREDIT REPORTING ACT

### (SPECIALIZED LOAN SERVICES)

94. The Jacksons re-allege and adopts the above paragraphs as if fully set forth herein and also asserts the following:

95. The Jacksons disputed the account and false credit reporting. Defendants were inaccurately reporting that the Jacksons were delinquent in their mortgage loan and in Default.  The Jacksons repeatedly contacted Defendants from September 2012 until January 11, 2016 and informed Defendants regarding ITS INACCURATE REPORTING.  Moreover, the Jacksons contacted the credit national bureaus and informed them of the inaccurate information and disputed same.  Nonetheless the credit reports were never changed because Defendants kept reporting the account as delinquent and in foreclosure.

96.   Despite receipt of the dispute, defendants failed to properly investigate and respond, failed to make any effort to verify the complaints of plaintiff and reported the false, derogatory information to the consumer reporting agencies in violation of their duties as a furnisher of credit.

97.   According to the national consumer reporting agencies' reports the defendants falsely reported about plaintiff's disputed debt.

98.   Defendants likewise willfully, or alternatively, negligently, violated the Fair Credit Reporting Act by failing to properly conduct a reasonable   investigation and by failing to supply accurate and truthful information.

99.   Rather, defendants reported false and inaccurate information and failed to retract, delete and suppress false and inaccurate information it reported about the plaintiff.

100.   Defendants failed to conduct a reasonable investigation with respect to consumer credit data it reported about the plaintiff.

101.   Defendants failed to review all relevant and pertinent information provided to it regarding the debt.

102.   As a proximate result of the Defendants' fraudulent conduct the Plaintiffs have been injured and damaged.

103.   Defendants' violations and false credit reporting about plaintiff have been a substantial factor in causing credit denials and other damages.

104.   Defendants are liable unto plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims   asserted herein including, but not limited to, out-of-pocket expenses, credit   denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of   incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorneys' fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws,

together with legal interest thereon from date of judicial demand until
paid.

105.   WHEREFORE PLAINTIFF, PRAYS that after all due proceedings be
had    there  be judgment herein in favor of Plaintiff and against
Defendants.  1) That there be Judgment in favor of Plaintiff and
against Defendants, for all reasonable damages sustained by Plaintiff
including but not limited to actual damages, statutory damages,
compensatory damages, out-of-pocket expenses, credit denials,
adverse action, lost credit opportunities, costs and  time of repairing
his credit, pain and suffering, embarrassment, inconvenience, lost
economic opportunity, loss of incidental time, frustration, emotional
distress, mental anguish, fear of personal and financial safety and
security, and for punitive/exemplary damages, attorneys' fees, and
court costs, and other assessments proper by law and any and all other
applicable federal and state laws, together with legal interest thereon
from date of judicial demand until paid; and 2) That this Honorable
Court order Defendants to reinvestigate and correct the credit
report(s), data emanations, and credit histories of and concerning
Plaintiff or any of plaintiff's personal identifiers.

## COUNT THIRTEEN

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

## (SPECIALIZED LOAN SERVICES)

106. The Jacksons re-incorporate by reference all of the above
paragraphs of this Complaint as though fully stated herein.

107.  Defendant servicer, Specialized Loan Services (SLS) is
considered a "debt collector" under the FDCPA as when it each
began servicing the loan, the loan was in default and it was
serviced as a defaulted loan. SLS has attempted to collect the
debt.  The debt is the loan for the Plaintiffs' house and thus
qualifies as a consumer or personal debt under the FDCPA.  SLS
violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692
et seq. ("FDCPA"), committed state law violations in attempting

to collect the debt and invaded Plaintiff's personal and financial privacy by its illegal efforts to collect a consumer debt from the Jacksons.

108. The acts and omissions of counter-defendant as more specifically stated in the facts constitutes numerous and multiple violations of the FDCPA including, but not limited to, §1692e(2), §1692e(8), and §1692f(1), with respect to the Jacksons.  As a result of Defendants' violations of the FDCPA, the Jacksons are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15U.S.C. § 1692k(a)(3) from Defendants.

109. Within the last 12 months, Defendants attempted to collect amounts not owed under the mortgage contract.  Within the last 12months, Defendants  sought unjustified amounts, which would include demanding any amounts not permitted under an applicable contract or as provided under applicable law in violation of the Act §1692f(1). Within the last 12 months, Defendants threatened legal action that was either not permitted or not actually contemplated in violation of the Act §1692 e.  Within the last 12 months, Defendants communicated with third parties: revealing or discussing the nature of debts with third parties in violation of the Act §1692 c.  Defendants within the last 12 months, failed to identify themselves and notify the Jacksons in every communication, that the communication was from a debt collector in violation of the Act §1692e(11).   Within the last 12 months Defendants falsely stated the amount of the debt owed in violation of §1692e2a.

110. Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows: (a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. (b) Existing laws and procedures for redressing these injuries are inadequate to

protect consumers. (c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts. (d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce. (e) It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

111. SLS as the servicer violated the FDCPA, 15 U.S.C. § 1692f, by using unfair and unconscionable means to collect the debt owed by the Morris, including the collecting and attempting to collect of interest and other charges, fees and expenses not authorized by the original Loan and/or Modification Agreement, or otherwise legally chargeable to the Jacksons as more fully set forth above.  SLS violated the FDCPA, 15 U.S.C. § 1692e(2), by misrepresenting the character, amount and legal status of the Plaintiffs' debt.  For example the default notices contained the incorrect amount owed on the loan and included incorrect amount of past due payments as well as incorrect amounts needed to bring the loan current.  SLS violated the FDCPA, 15 U.S.C. §§ 1692e(5)and 1692f(6), by threatening to foreclose on the Jacksons' home even though it has no present right to possession of the property under the security agreement, and by threatening to take other action prohibited by law.  SLS violated the FDCPA, 15 U.S.C. § 1692g(a)(1), by failing to accurately and fully state in communications to the Plaintiffs "the amount of the debt."

112.  SLS by overcharging Plaintiffs' escrow account, falsely represented the amount of the debt necessary to cure the deficiency of the escrow account in violation of 15 U.S.C. § 1692e(2)(A). SLS also falsely represented the character, amount, or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).  SLS by failing to report the disputed debt as disputed to credit reporting bureaus, communicated credit information which was known or which should have been known as false in violation of 15 U.S.C. §

1692e(8). SLS by continuing to charge late fees and interest, and by holding the Jacksons' payments in a suspense account, failed to cease collection on a disputed debt in violation of 15 U.S.C. § 1692g(b).

113. As a result of SLS's unlawful debt collections practices, the Jacksons have suffered and continue to suffer financial harm including but not limited to:

      a.  Increased interest expenses on their mortgage;

      b.  Improperly charged late fees on their mortgage;

      c.  Damage to their credit report and credit score; and

      d.  Attorney's fees and costs associated with attempting to correct this dispute.

114. The acts and omissions of Defendant as more specifically stated in the Facts constitutes numerous and multiple violations of the FDCPA including, but not limited to, §1692e(2), §1692e(8), and §1692f(1), with respect to Plaintiff.

115. As a result of the violations of the FDCPA, Plaintiff is entitled to (1) statutory damages; (2) actual and compensatory damages; and, (3) reasonable attorney's fees, costs, and expenses from Defendants. As a result of SLS's violations of the FDCPA, Counter-Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant.

## COUNT FOURTEEN

## VIOLATIONS OF THE TELEPHONE
## CONSUMER PROTECTION ACT
## (SPECIALIZED LOAN SERVICES)

116. The Plaintiffs re-incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

*117.* The acts and omissions of Defendant as more specifically stated in the facts constitutes numerous and multiple violations of the TCPA including, but not limited to 47 USC § 227(b)(1) Restrictions on use of automated telephone equipment.  **It shall be unlawful for any person** within the United States – (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party)**using any automatic telephone dialing system** or an artificial or prerecorded voice -(iii) **to any … cellular telephone service…**47 USC § 227(b)(1) *(B) an action to recover for actual monetary loss from such a violation, or to receive***$500 in damages for each such violation***, whichever is greater, If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an **amount equal to** not more than 3 times ($1,500) the amount available under subparagraph (B) of this paragraph.*

118. The Defendants used automatic telephone dialing systems to call the Plaintiffs' cell phones numerous times from June 2013 until December 2015.  The Plaintiffs have never given the Defendant permission to call their cell phones with automated dialing systems.  As a consequence of said acts, the Defendant has violated the TCPA and is liable for damages pursuant to federal law.

## COUNT FIFTEEN:

## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

## (SPECIALIZED LOAN SERVICES)

119.   The Plaintiff makes a claim under ECOA, which makes it illegal "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). One way that ECOA effectuates this goal is through its notice requirement, which states: "Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." Id. § 1691(d)(2). ECOA defines an "adverse action" as a: denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested.

120.   When a creditor takes an adverse action against an applicant without giving the required notice, the applicant may sue for a violation of ECOA.  § 1691e ("Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant"); see also Thompson v. Galles Chevrolet Co., 807 F.2d 163, 166 (10th Cir. 1986) (quoting Sayers v. Gen. Motors Acceptance Corp., 522 F. Supp. 835, 840 (W.D. Mo. 1981)).

121.   Plaintiffs contend that the Defendant's acceleration of his debt constituted a "revocation of credit" for purposes of the definition of "adverse action." ECOA defines "credit" to mean "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d).

122.   On June 12, 2015, Plaintiffs received a notice from the Jauregui Law Firm informing them that, "due to the default under the terms of the mortgage or deed of trust, the entire balance is due and payable." Plaintiffs made diligent  efforts to determine whether SLS's default notices were mere clerical errors or represented SLS's termination of the loan modification agreement. Based on SLS's prolonged non-responsiveness, and its affirmative statements regarding loan acceleration and default, SLS terminated the loan modification agreement and thereby revoked the Plaintiffs' credit for purposes of § 1691(d)(6).

123.   When SLS informed the Plaintiffs that it had accelerated his loan and was commencing foreclosure proceedings, its statements communicated the bank's refusal to abide by the terms of the loan modification agreement entered into on August 29, 2013, which had given Plaintiffs a longer period to repay the loan. On its face, this communication revoked the prior credit arrangement. Because the Defendants failed to send an adverse action notice, the Defendants took an adverse action without complying with ECOA's notice requirements and have violated the terms of the EOCA and owe damages for said violations to the Plaintiffs.

**COUNT SIXTEEN:**
**CLAIM FOR DECLARATORY RELIEF**
**(ALL DEFENDANTS)**

124.   The Jacksons re-allege and adopts the above paragraphs as if fully set forth herein and also asserts the following:

125.   Defendants breached the contract with the Jacksons by failing to follow the terms for notice requirements agreed to in the mortgage contract as well as payment application.  Defendants never sent the Jacksons the required notices and failed to properly apply their payments.  As a result the Jacksons are entitled to the following declaratory relief:  (1) An Order declaring that they are not in default of their mortgage agreement and declaring the notice of default is null and void.

(2) An order declaring that Defendants have no right or authority to foreclose on the Jacksons' property.  (3) An Order prohibiting Defendants from foreclosing on the Jacksons' property.

**PLAINTIFFS (THE JACKSONS) DEMAND A TRIAL BY JURY.**

**WHEREFORE,** the Plaintiffs having set forth their claims for relief against the Defendants respectfully pray of the Court as follows:

a.    That the Plaintiffs have and recover against the Defendants, a sum to be determined by this Court and their peers in the form of actual damages.

b.    That the Plaintiffs have and recover against the Defendants a sum to be determined by this Court in the form of compensatory and punitive damages.

c.    That Plaintiffs, the Jacksons, be awarded attorney fees and court cost.

d.    That the Plaintiffs have such other and further and proper relief as the Court may deem just and proper:

RESPECTFULLY SUBMITTED:

/s/ Kenneth James Lay
HOOD & LAY, LLC
1117 22nd Street South
Birmingham, Alabama 35205
Tel: (205) 323-4123
Fax:(205) 776-2040
Attorney for Plaintiffs

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on this the 12th day of April 2016, a copy of the forgoing amended complaint has been served upon counsel for all parties to this proceeding by U.S. Mail, postage prepaid.


<u>/s/ Kenneth J Lay</u>
Kenneth Lay