IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| KARUN N. JACKSON, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | CIVIL ACTION 16-062-CG-M |
| | : | |
| BANK OF NEW YORK MELLON, *et al.*, | : | |
| | : | |
| Defendants. | : | |

REPORT AND RECOMMENDATION

Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and memorandum in support thereof (Doc. 19) under Federal Rule of Civil Procedure 12(b)(6) was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court. Plaintiff has filed a response (Doc. 30) to which Defendant has replied (Doc. 33). After careful consideration of the record, it is recommended that Defendants' Motion to Dismiss be granted pursuant to Rule 12(b)(6) for failure to state a claim against Specialized Loan Servicing, LLC[1] (hereinafter "SLS"), Bank of New York Mellon (hereinafter "BONYM"), and Mortgage Electronic Registration Systems (hereinafter "MERS") as follows:

---

[1] Identified as Specialized Loan Services in the Amended Complaint.

Counts one, two, three, four, five, eight, and nine dismissed against Defendants, SLS and BONYM.  Counts six, seven, and sixteen dismissed against Defendants, SLS, BONYM, and MERS.  Counts ten, eleven, twelve, thirteen, fourteen, and fifteen dismissed against SLS, resulting in this action being dismissed in its entirety against SLS, BONYM, and MERS.  This action remains pending against Bank of America (hereinafter "BANA") as to Counts six and sixteen.

PROCEDURAL BACKGROUND

Plaintiffs, Karun and Ursula Jackson ("Plaintiffs" or "Jacksons") filed this action on January 12, 2016, against Defendants, Bank of New York Mellon (hereinafter "BONYM"), Bank of America, N.A. (hereinafter "BANA"), Specialized Loan Servicing, LLC (hereinafter "SLS"), and Mortgage Electronic Registration Systems (hereinafter "MERS") in the Circuit Court of Baldwin County, Alabama.  Defendants removed the case on February 12, 2016, (Doc. 1), and on February 19, 2016, filed a Motion for More Definite Statement.[2]  (Doc. 6).  The Court granted Defendants' Motion

---

[2] Defendants, in their Motion for More Definite Statement asserted that "[i]n setting forth these claims, however,  Plaintiffs do not identify which claim is asserted against which  defendant, do not clarify which allegations are directed at which  defendant, and, for three of the four defendants, do not even reference the defendant anywhere in the body of the Complaint.  Instead, Plaintiffs assert each claim against a 'Defendant' or the 'Defendants' and base these claims on allegations

and Plaintiffs filed their Amended Complaint ("Complaint") (Doc. 17) on April 12, 2016.  Therein, Plaintiffs alleged sixteen counts against the Defendants (collectively) for causes of action relating to the financing, servicing, and foreclosing of their home by the Defendants.  (Doc. 17). More specifically, Plaintiffs have asserted claims for (1) Negligence;(2) Wantonness;(3) Unjust enrichment;(4) wrongful foreclosure;(5) Slander of title;(6) Breach of contract;(7) Fraud;(8) Placed in a false light;(9) defamation, libel, and slander;(10) Violations of the Truth in Lending Act ("TILA");(11) Violations of the Real Estate Settlement Procedures Act ("RESPA");(12) Violations of the Fair Credit Reporting Act ("FCRA");(13) Violations of the Fair Debt Collection Practices Act ("FDCPA");(14) Violations of the Telephone Consumer Protection Act ("TCPA"); (15) Violation of the Equal Credit Opportunity Act ("ECOA"); and (16) Claim for Declaratory Relief. (*See* Doc. 17, generally).  Plaintiffs assert Counts One through

---

concerning a "Defendant" or the 'Defendants,' without ever differentiating between the four separate defendants named in this case.  By indiscriminately veering in-and-out of the singular and plural forms in describing the defendant or defendants against whom Plaintiffs' claims are asserted, Plaintiffs' Complaint fails in even the most fundamental respect, causing unresolved confusion that can only be remedied through re-pled allegations." (Doc. 6 at 2-3).  After Plaintiffs were ordered to file an Amended Complaint and given several extensions of time to do the same, Plaintiffs' filed an Amended Complaint (Doc. 17) that was strikingly similar to the original Complaint and which contains most all of the complained-of deficiencies identified above.

Five, Count Eight, and Count Nine collectively against SLS and BONYM; Counts Six and Sixteen against all Defendants; Count Seven against SLS, BONYM, and MERS; and Counts Ten through Fifteen against SLS only. (*Id*). The Defendants, SLS, BONYM, and MERS filed a Motion to Dismiss Plaintiffs' Complaint in its entirety.[3] (Doc. 19). Plaintiffs responded on June 3, 2016 (Doc. 30)[4] and Defendants replied on June 13, 2016 (Doc. 33).

Factual Background

On August 28, 2006, Plaintiffs purchased their home located at 26235 Jackson Circle extension, in Daphne, Alabama by executing a mortgage ("Mortgage") and promissory note ("Note") with First Residential Mortgage Network, Inc. ("First Residential") which provided for an escrow account for taxes and insurance. (Doc. 17 at 2). The loan was allegedly later transferred and sold to SLS and BONYM.[5] (*Id.* at 3). From the date of purchase until September, 2012, Defendants accepted and cashed Plaintiffs' monthly payments.[6] (*Id.* at 4). From October, 2012, to January,

---

[3] Bank of America, also a named Defendant, is not a party to the Motion to Dismiss currently before this Court.
[4] Plaintiff's initial response was filed on May 20, 2016 (Doc. 24), but was stricken because it failed to adhere to this Court's rules regarding length. Plaintiffs were given an opportunity to re-file their response and did so timely. This Court will only consider Plaintiffs' second response for purposes of this ruling.
[5] Plaintiffs assert that the transfer was invalid. (*Id.* at 2).
[6] Plaintiffs allege that their monthly payments were not properly applied to their account. (*Id.* at 4).

2014, Plaintiffs' monthly payments were returned to Plaintiffs. (*Id*). On November 8, 2015, foreclosure proceedings were initiated on the Plaintiffs' residence, which Plaintiffs contend was improper because they were not in default on their loan. (*Id*.) In November, 2012, Plaintiffs sent their monthly payment to Defendants, but it was refused and returned without explanation. (*Id*. at 4). Thereafter, Defendants advised Plaintiffs that they would no longer accept payment from Plaintiffs on their account and that the account was being turned over for foreclosure. (*Id*.) In November and December, 2015, Defendants published the default and upcoming foreclosure sale of the Plaintiffs' residence. (*Id*. at 5). On January 11, 2016, foreclosure proceedings were conducted. (*Id*. at 9). As of the filing of Plaintiffs' Complaint, Plaintiffs still reside at 26235 Jackson Circle Extension, Daphne, Alabama. (*Id*. at 2).

## STANDARD OF REVIEW

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must first satisfy the pleading requirements of Rule 8(a)(2), which provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."

Fed. R. Civ. P. 8(a)(2).  While Rule 8 establishes a regime of "notice pleading," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), it does not eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2).  The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2009).  There must, in addition, be a pleading of facts.  Though they need not be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id*.  That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955.  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966 (second brackets in original).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949.  Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements.  *Iqbal*, 566 U.S. at 681, 129 S. Ct. at 1951.

When considering whether a complaint states a claim for relief, the Court "should assume, on a case-by-case basis, that well pleaded factual allegations are true and then determine whether they plausibly give rise to an entitlement to relief." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

**I.   State Law Claims**

### 1. Pre-emption of State law claims pursuant to the Fair Credit Reporting Act

Defendants have asserted that Plaintiffs' state law claims for Negligence (Count One), Wantonness (Count Two), Fraud (Count Seven), False Light Invasion of Privacy (Count Eight), and Defamation, Libel, and Slander (Count Nine) are preempted by the FCRA to the extent that the claims are based on the allegations that Defendants reported false information to the credit agencies. (Doc. 19 at 18-19). Because a determination of whether the state law claims at issue are pre-empted is dispositive, this Court will address federal preemption pursuant to the FCRA first.

The FCRA contains two preemption provisions. The first provision states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). The second provision provides in relevant part:

> No requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.

15 U.S.C. § 1681t(b)(1)(F). According to Defendants, the second provision preempts Plaintiffs' state law tort claims that are based on information provided to credit reporting agencies.  Plaintiffs urge this Court to follow the decisions of other districts, where absolute pre-emption was not upheld.  (Doc. 30 at 32-35, generally).  Despite varying interpretations of the scope of Sections 1681t(b)(1)(F) and 1681h(e), this Court has previously found that 1681t(b)(1)(F) is controlling and is an absolute bar to state actions (s*ee Bosarge v. T-Mobile USA, Inc.*, 2008 WL 725017 at *4 (S.D. Ala. March 17, 2008)). The Northern District of Alabama has, likewise, upheld this conclusion, in part, due to the "growing consensus, [...] that tort claims based on a furnisher's alleged reporting of inaccurate credit information to credit agencies fall within the scope of section 1681t(b)(1)(F), not section 1681h(e), and are preempted." *Bush v. J.P.Morgan Chase, N.A.*, 2016 WL 324993, at *7 (N.D. Ala. January 27, 2016). *See also Hamilton v. Midland Funding, LLC*, 2015 WL 5084234, at *7 (N.D. Ala. Aug. 27, 2015) (finding that § 1681t(a)(1)(F) barred the plaintiff's invasion of privacy

claim based on the defendant's credit reporting."); *Williams v. Student Loan Guarantee Found. of Arkansas*, 2015 WL 241428, at *13 (N.D. Ala. Jan. 20, 2015) ("§ 1681t(b)(1)(F) preempts Williams's state-law claims to the extent they address the subject matter regulated under § 1681-s2."); *Barnett v. JP Morgan Chase Bank, Nat. Ass'n*, 2013 WL 3242739, at *13 (N.D. Ala. June 26, 2013) (holding that § 1681t(b)(1)(F) preempted the plaintiff from pursuing defamation, libel, or slander claims against Chase arising out of any false reports to credit agencies).

Based on the above, this Court finds that Plaintiffs' state law claims, to the extent they are based on Defendants' reporting of false information to credit agencies, are pre-empted by the FCRA and due to be dismissed.[7]

### 2. Negligence and Wantonness (BONYM, SLS)[8]

In their Complaint, Plaintiffs assert that Defendants, BONYM and SLS, were negligent because they:

> [N]egligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed by the Plaintiff, negligently caused his property

---

[7] This Court will still address Plaintiffs' state law claims which are not pre-empted pursuant to the above analysis.

[8] Plaintiffs' Complaint repeatedly uses the term "defendants" without any specification as to which "defendant" Plaintiffs are referring. However, Plaintiffs identify which claims have been asserted against which Defendant(s) by placing a parenthetical under each count that identifies the name(s) of each Defendant(s) against whom the claims are being asserted.  This court will address each claim only with respect to the Defendant(s) that were identified in this manner.

insurance to be canceled, negligently defaulted the
Plaintiff, negligently attempted a foreclosure sale
on Plaintiff's property, were negligent by failing to
make sure that information disseminated to others
(including the national credit bureaus and those
credit grantors likely to use the information provided
by those bureaus) was not false, neither libelous nor
slanderous, and rose to the level of maximum accuracy;
negligent by failing to properly train their employees
on the thorough investigation of disputed accounts;
negligent by failing to properly train, and/or
supervise their employees and agents with regard to
the handling of Plaintiff's loan account and failing
to remove the adverse reporting  from Plaintiff's
credit once he disputed the same.

(Doc. 17 at 6). Plaintiffs' wantonness claim includes the

same allegations, except they allege that Defendants'

conduct was wanton rather than negligent. (*Id*. at 7).

Defendants contend that these claims fail as a matter of

law because Alabama does not recognize a cause of action

for negligent or wanton servicing of a mortgage account.

(Doc. 19 at 6-8).  This Court agrees.

Alabama law has established that no cause of action

for negligent/wanton servicing of a mortgage account exists

in the absence of personal injury or property damage. *See,*

*e.g., Blake v. Bank of America, N.A.*, 845 F.Supp.2d 1206,

1210-11 (M.D.Ala. 2012) ("Alabama law does not recognize a

cause of action for negligent or wanton mortgage

servicing"); Webb v. Ocwen Loan Servicing, LLC, 2012 WL

5906729, *7 (S.D. Ala. Nov. 26, 2012)("under Alabama law a

cause of action for negligent servicing of a mortgage

against Ocwen cannot be maintained where the damages are economic, *i.e.,* lost commissions"). Indeed, "mortgage servicing obligations are a creature of contract, not of tort, and stem from the underlying mortgage and promissory note executed by the parties, rather than a duty of reasonable care generally owed to the public." *Wallace v. SunTrust Mortgage, Inc.*, 974 F. Supp. 2d 1358, 1370(S.D.Ala. 2013).

Plaintiffs assert that Defendants "violated the duty owed to them imposed by RESPA"[9] and that Plaintiffs' "alleged dealings with the defendants that are separate and apart from the contract." However, it is evident that Plaintiffs' negligence/wantonness claims against BONYM and SLS truly stem from the servicing of their Mortgage/Note. *See Bush*, 2016 WL 324993, at *8  ("Bush's negligence claim includes allegations that Chase negligently serviced his loan, attempted to collect sums he did not owe, caused his property insurance to be cancelled, defaulted him, and

---

[9] Plaintiffs' Complaint does not make these assertions; however, they were raised by Plaintiffs in their response (Doc. 30).  Counsel for Plaintiffs made this same argument in almost exact form in *Bush,* 2016 WL 324993, at *9. There the Court stated "[t]o the extent [Plaintiff] now contends that his negligence and wantonness claims are based on [Defendant's] alleged breach of duties created by RESPA (or some other unidentified statute), his amended complaint does not comport with the *Iqbal/Twombly* pleading requirements because it provides no clue that he has been proceeding under such a theory."  Here, even if Plaintiffs' argument that their negligence/wantonness claims stem from something other than the servicing of their Mortgage/Note, Plaintiffs' claims would still fail as a matter of law because they did not assert such a claim in their Complaint.

attempted a foreclosure sale on his property. Bush's wantonness claim. . . alleges that Chase's conduct was wanton rather than negligent.  All of these allegations are based on duties arising out of the note and mortgage and amount to allegations that Chase negligently or wantonly breached its contractual servicing obligations.") (citations omitted).  Further, in the present action, Plaintiffs do not assert that they suffered personal injury or property damage such that their claims for negligence and/or wantonness should survive despite the above analysis.  As a result, Plaintiffs' negligent/wantonness claims (counts one and two) fail as a matter of law[10] and are due to be dismissed.[11]

### 3.    Unjust Enrichment (BONYM, SLS)

---

[10] To the extent that Plaintiffs' claims are based on SLS' failure to train/supervise its employees, Plaintiffs claims will still fail as a matter of law.  To prevail on this claim, Plaintiffs would have to show that "(1) the employee committed a tort recognized under Alabama law; (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence; and (3) the employer failed to respond to this notice adequately." *Lawrence v. Christian Mission Center Inc. of Enterprise*, 780 F.Supp.2d 1209, 1218 (M.D. Ala. 2011).  Plaintiffs have not pled any facts to support any of these required elements.  Instead, Plaintiffs have simply made a general assertion that defendants failed to train/supervise its employees without providing any facts to support such an allegation, which is insufficient.

[11] Plaintiffs have requested that they be allowed to file amended pleadings in the event that this Court finds Plaintiffs have failed to state a claim under Rule 12(b)(6) and they have made this request as to each of the sixteen causes of action.  However, Plaintiffs have already filed an Amended Complaint based on Defendants' Motion for a More Definite Statement and this Court unilaterally **DENIES** Plaintiffs' request to file yet another Amended Complaint, as there is no reason to believe that Plaintiffs can/will cure the subject deficiencies if given a third opportunity.

Plaintiffs contend that "[t]he actions of Defendants in attempting foreclosure on the home of the Plaintiff in violation of law resulted in Defendant being unjustly enriched by the payment of fees, insurance proceeds and equity in the home."  (Doc. 17 at 8).  According to Defendants, BONYM and SLS, Plaintiffs' unjust enrichment claim fails as a matter of law because the claim concerns the same subject matter as the underlying Mortgage and Note.  (Doc. 19 at 8-9).

"The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Flying J Fish Farm v. Peoples Bank of Greensboro,* 12 So.3d 1185, 1193 (Ala.2008) (emphasis removed, internal quotation marks omitted).  It does not generally apply where there is an express contract between the parties governing the same subject matter. *Kennedy v. Polar-BEK & Baker Wildwood P'ship,* 682 So.2d 443, 447 (Ala.1996).  *See also Selman v. CitiMortgage, Inc.*, 2013 WL 838193, at *13 (S.D. Ala. March 5, 2013)  ("express written agreements concerning all the same subject matter as the implicit contract underlying unjust enrichment cause of action are fatal to that cause of action, as a matter of law").

Here, the complained-of action, i.e., "attempted foreclosure" and "payment of fees, insurance proceeds, and equity" are governed by the terms of the Mortgage/Note. (*See* Docs. 19-1 and 19-2).[12]  Because Plaintiffs' assertion relating to the unjust enrichment claim against Defendants is the "same subject matter" as the underlying Mortgage and Note, Plaintiffs' unjust enrichment claim (Count Three) is due to be dismissed.[13]

### 4.    Wrongful Foreclosure (BONYM, SLS)

Plaintiffs' wrongful foreclosure claim alleges as follows:

> 42.  The foreclosure proceeding conducted on January 11, 2016 by the Defendants were either negligent, wanton or intentional, depending on proof adduced at Trial. The power of sale was exercised for a purpose other than to secure the debt owed by plaintiff, as the plaintiff was current on the debt at the time of the default and acceleration.

---

[12] "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[13] Of note, Plaintiffs did not respond to the legally sound arguments presented in Defendants' Motion to Dismiss.  While not the reason for this Court's finding that Plaintiffs' claim is due to be dismissed, Plaintiffs' claim could also be considered abandoned.  *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *see also McMaster v. United States*, 177 F.3d 936, 940-41 (11th Cir. 1999) (noting that a claim may be considered abandoned when the allegation is included in the plaintiff's complaint but he fails to present any argument concerning the claim to the district court).

(Doc. 17 at 8-9).   Defendants, SLS and BONYM, contend that
this claim fails because Plaintiffs have not offered any
facts showing that the foreclosure was performed for a
reason other than to secure the loan owed by Plaintiffs.[14]
(Doc. 19 at 11).  In response, Plaintiffs assert that "all"
elements of a cause of action for wrongful foreclosure do
not have to be satisfied relying on *In re Sharpe, 391 B.R.
117, 152 (Banker. N.D. Ala. 2008).* (Doc. 30 at 14).

        "Alabama has long recognized a cause of action for
'wrongful foreclosure' arising out of the exercise of a
power-of-sale provision in a mortgage." *Jackson v. Wells
Fargo Bank, N.A.*, 90 So.3d 168, 171 (Ala.2012) (claim for
wrongful disclosure is defined as one in which "a mortgagee
uses the power of sale given under a mortgage for a purpose
other than to secure the debt owed by the mortgagor")
(citation omitted); *see also Reeves Cedarhurst Development
Corp. v. First American Federal Sav. and Loan Ass'n*, 607
So.2d 180, 182 (Ala.1992) ("A mortgagor has a wrongful
foreclosure action whenever a mortgagee uses the power of
sale given under a mortgage for a purpose other than to
secure the debt owed by the mortgagor.").

---

[14] SLS additionally contends that this claim is due to be dismissed
against it because SLS did not foreclose on the property; Plaintiffs do
not appear to contest this fact in their response.

In the instant action, Plaintiffs conclusively state
that the foreclosure was "for a purpose other than to
secure the debt owed by plaintiff". (Doc. 17 at 9).
However, Plaintiffs' Complaint is devoid of any facts to
support this conclusory statement. Further, Plaintiffs
fail to offer any alleged alternative cause for the
foreclosure such that this Court could ostensibly find that
Plaintiffs have properly stated a claim. Instead,
Plaintiffs only continue to dispute that they had defaulted
on the debt prior to the foreclosure, which is not
sufficient. *See Wallace v. Suntrust Mortgage Inc.*, 974
F.Supp. 2d. 1358, 1363-64 (S.D. Ala. 2013)(dismissing
wrongful foreclosure claim because while "[plaintiff]
alleges that 'Suntrust initiated foreclosure against [her]
in violation of the law' because she 'is not now, nor has
she ever been in default of her mortgage loan," plaintiff
did not allege a purpose other than to secure her debt.)
Because Plaintiffs have not offered any evidence that
Defendants foreclosed on their property for a purpose other
than to secure the debt owed by Plaintiffs, their wrongful
foreclosure claim (Count Four) is due to be dismissed.

**5.   Slander of Title (BONYM, SLS)**

Plaintiffs allege "[d]efendant, in attempting
foreclosure has caused a cloud to be placed on the title of

the property of the plaintiff […] [and] he was caused to suffer injuries and damages and claims all damages allowable under the law." (Doc. 17 at 9). Defendants argue Plaintiffs have not stated a proper claim because they have not established at least three of the required elements of slander of title. (Doc. 19 at 12-13).

> A slander of title claim has six elements:
>
> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Merchs. Nat'l Bank of Mobile v. Steiner,* 404 So.2d 14, 21 (Ala.1981) (quoting *Womack v. McDonald,* 121 So. 57, 59 (Ala.1929)). In the present action, SLS and BONYM assert that Plaintiffs have not provided any facts from which the requirement of malice or disparagement could be found.

> Malice does not equate with negligence. *Alabama Power Co. v. Laney*, 428 So.2d 21 (Ala.1983). Malice requires "proof that [the defendant] intentionally disparaged [the] plaintiff's title to the property slandered or recklessly disparaged [it] without information sufficient to support a bona fide belief" in the veracity of the disparaging statement. *Harrison v. Mitchell*, 391 So.2d 1038, 1041 (Ala.Civ.App.1980) (emphasis added). In other words, "if the defendant had probable cause for believing the statement, there can in law be no malice." [*Merchants Nat'l Bank of Mobile v.*] *Steiner*, 404 So.2d [14] at 21 [(Ala.1981)]

*Roden v. Wright*, 646 So.2d 605, 611 (Ala.1994).  Based on
the Complaint, this Court agrees that Plaintiffs have not
sufficiently alleged malice on the part of Defendants, such
that their claim could survive.

Nevertheless, assuming Plaintiffs could show malice,
their claim still fails as Plaintiffs have not sufficiently
pled special damages.  "To satisfy the special damages
pleading requirement, a plaintiff must allege that the
defendant's false publication 'interrupted, or injuriously
affected, some dealing of the plaintiff with his property'
or caused the plaintiff to incur expenses 'to relieve his
right to the property from the damnifying effect of such
false and malicious slander.'  Special damages must be
'distinctly and particularly set out' in the complaint, and
'[a]n allegation of loss in general terms is not
sufficient.' " *Prickett v. BAC Home Loans,* 946 F.Supp.2d
1236, 1244 (N.D.Ala.2012) (quoting *Ebersole v. Fields,* 62
So. 73, 75 (Ala.1913)).  Typically, special damages pertain
to failed transactions or other forms of lost profits
relating to the property. *See Norman v. Bozeman,* 605 So.2d
1210, 1214 (Ala.1992) (describing various types of losses
that might amount to special damages).

Plaintiffs' Complaint alleges that in attempting
foreclosure Defendants have "caused a cloud to be placed on

the title of the property" and that as a result, Plaintiffs "were caused to suffer injuries and damages". (Doc. 17 at 9). Such language falls short of Plaintiff's burden. *See Bush*, 2016 WL 324993, at *11 (Slander of Title claim dismissed where Plaintiff "merely alleged that the Defendants 'caused a cloud to be placed on the title of [his] property' and that '[a]s the proximate cause of the ... slandering of [his] title, he was caused to suffer injuries and damages and claims all damages allowable under law.') Further, Plaintiffs failed to respond to the issue of special damages after it was raised by Defendants.[15] Again, Plaintiffs have simply made a general conclusory assertion of the claim against the Defendants without providing facts from which this Court could conclude that Plaintiffs have stated a viable cause of action.[16] As such, this claim (count five) is due to be dismissed.

### 6.   Breach of Contract (all Defendants)

In Count Six, Plaintiffs assert that the allegedly breached contract is the Mortgage with the Lender, First Residential. (Doc. 17 at 9-11). Defendants, SLS, BONYM, and MERS, contend this claim is due to be dismissed against

---

[15]*See* FN 12.
[16]Plaintiffs' claim for slander of title stemming from the foreclosure of Plaintiffs' home against SLS equally fails on its face because there is no evidence that SLS conducted the foreclosure sale, a fact, which Plaintiffs do not attempt to dispute in their response. (*See* Doc. 30 at 14-15).

them as a matter of law because they were not a party to the Mortgage. (Doc. 19 at 14-16).

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So.3d 872, 880 (Ala.2009) *quoting Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala.2002).

In order to determine whether Plaintiffs' breach of contract claim is viable this Court need only look to the first element of the cause of action i.e., whether there is a contract binding the parties.  As to SLS, Plaintiffs have not alleged that SLS is a party to the Mortgage, much less factually supported such a claim.  In fact, Plaintiffs repeatedly assert that SLS is the servicer of their loan, not their lender.  Because they are not a party to the Mortgage, the breach of contract claim against SLS fails as a matter of law.

With regard to MERS, Plaintiffs, in their response, assert that "[i]n Count Six" they "also signed a mortgage with MERS acting as nominee for the lender." (Doc. 30 at 16).  A review of Count Six, however, reveals no such language.  Nevertheless, even if this language had been

pled as alleged, this claim would still fail against MERS because it is not a party to the Mortgage. Instead, the Mortgage specifically states "MERS is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successor and assigns […]". (Doc. 19-2 at 2). Plaintiff has not pled any facts that would suggest that MERS is a party to the contract and not just a nominee as set forth in the Mortgage itself. As a result, this claims fails as a matter of law against MERS.

With regard to BONYM, Plaintiffs, in their response to the motion to dismiss, have stated "[o]bviously the Jacksons are asserting that assuming that BONYM has the rights of the Lender, it and its agents failed to follow the terms and provisions of the mortgage contract." (Doc. 30 at 16). Once again, however, Plaintiffs have not made such an assertion in their Complaint. Instead, Count Six only states that Plaintiffs entered into a contract with their Lender, First Residential, and the two paragraphs to which Plaintiffs point to allege a breach of contract (paragraphs 2 and 22) specifically state the terms as between the "borrower" and the "Lender". (*See* Doc. 19-1). Plaintiffs have not alleged in their Complaint that BONYM is the Lender and but for their conclusory label of BONYM

as a potential invalid assignee in their response, they
fail to actually allege in their Complaint that their
mortgage was assigned and that BONYM was the assignee.
This Court is not inclined to assume such facts for them.

As a result, Defendants' Motion to Dismiss the breach
of contract claim (count six) against SLS, MERS, and BONYM
is due to be granted.

**7.  Fraud (BONYM, SLS, MERS)**

Plaintiffs' allegations with regard to their Fraud
claim are as follows:

56.  The Defendant misrepresented that the loan was in
default. Further, the Defendant made false and
misleading representations, to wit: dissemination of
inaccurate information regarding the loan account as
being in default and dissemination of inaccurate
information regarding the credit history and credit
of the Plaintiff that was known to be false.  Defendants
also falsified documents and records related to the
Jacksons mortgage loan and attempted to fraudulent
transfer, sale or assign the loan by illegal and
fraudulent means.

57.  Said misrepresentations were made negligently
and/or willfully and/or wantonly and/or fraudulently,
and/or recklessly with the intent to induce the
Plaintiff to act thereon and upon which the Plaintiffs
did in fact act to their detriment.

58.  Plaintiff justifiably relied upon said
representations made by Defendant and as a result of
said reliance proceeded with the execution of the
loan; at the time said representations were made the
same were false and known by the Defendant to be false
and/or were false and made by mistake with the intent
for Plaintiff to rely thereon.

(Doc. 17 at 11-12).  Defendants argue that this claim is
due to be dismissed because it fails to meet the heightened
pleading standard set forth in Federal Rule of Civil
Procedure 9(b). (*See* Doc. 19 at 17).  In reply, Plaintiffs
have addressed the standard (discussed below) and stated as
follows:

> Plaintiff's [sic] complaint alleges exactly what fraud
> occurred and how it occurred. These statements satisfy
> the 11th Circuit standard set out in *Ziemba*. Under the
> applicable Alabama law standard for pleading fraud,
> the Plaintiff also meet the minimum pleading
> standards.

(Doc. 30 at 19).  Fed.R.Civ.P. 9(b)'s heightened pleading
requirements provide that "[i]n alleging fraud or mistake,
a party must state with particularity the circumstances
constituting fraud or mistake." Rule 9(b), Fed.R.Civ.P.
This heightened pleading rule "serves an important purpose
in fraud actions by alerting defendants to the precise
misconduct with which they are charged and protecting
defendants against spurious charges of immoral and
fraudulent behavior." *Brooks,* 116 F.3d at 1370-71.
(citations and internal quotation marks omitted).  However,
"a court considering a motion to dismiss for failure to
plead fraud with particularity should always be careful to
harmonize the directives of Rule 9(b) with the broader
policy of notice pleading." *Friedlander v. Nims*, 755 F.2d

810, 813 n.3 (11th Cir.1985).  The notice pleading, Rule 8,
directs that a complaint need only provide "a short and
plain statement of the claim showing that the pleader is
entitled to relief" and that averments of the complaint
should "be simple, concise, and direct." Rule
8(a)(2),(d)(1).

"It has been established that Rule 9(b) is satisfied
if the complaint sets forth the following: '(1) precisely
what statements were made in what documents or oral
representations or what omissions were made, and (2) the
time and place of each such statement and the person
responsible for making (or, in the case of omissions, not
making) same, and (3) the content of such statements and
the manner in which they misled the plaintiff, and (4) what
the defendants obtained as a consequence of the fraud.'"
*United States ex rel. Clausen v. Laboratory Corp. of
America, Inc.*, 290 F.3d 1301, 1310 (11th Cir.2002)
(citations omitted); *see also Hill v. Morehouse Medical
Assocs., Inc.*, 2003 WL 22019936, *3 (11th Cir. Aug. 15,
2003) ("plaintiff must plead facts as to time, place, and
substance of the defendant's alleged fraud, specifically
the details of the defendants' allegedly fraudulent acts,
when they occurred, and who engaged in them."). In other
words, "to avoid dismissal, a complaint alleging fraud must

plead the 'who, what, when, where and how' of the alleged fraud." *Hay v. Bank of America*, 2013 WL 1339729, *12 (N.D.Ga.March 29, 2013)(citations omitted) (dismissing fraud claim where plaintiff failed to identify any person responsible for committing the alleged fraud or the time or place of the fraudulent act); *see also American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067(11th Cir.2007) (affirming dismissal of insurance fraud claims where plaintiff failed to identify the agents or corporate representatives who participated in the alleged fraud, failed to identify the dates when the agents rendered assistance, and failed to explain how the agents' conduct furthered the commission of the fraud).

In the present action, Plaintiff does not specify which Defendants were allegedly involved in the fraud asserted, much less identify the individuals who allegedly made the false representations to Plaintiffs on behalf of Defendants.  Plaintiffs do not specify, in detail, the precise statements made to Plaintiffs, the dates on which these representations were made, or the manner in which they were made.  Moreover, Plaintiffs fail to provide any facts that support that these Defendants (BYONYM, SLS, or MERS) received a benefit as a consequence of these alleged misrepresentations.  Instead, Plaintiffs only state that as

a result of these general assertions, Plaintiffs
"proceeded with the execution of the loan" and none of
these Defendants are the lender.

Despite Plaintiffs' conclusory assertion that the
Complaint sets forth facts that would satisfy their fraud
claim, the same do not appear in the record. As a result,
Plaintiffs' fraud claim (count seven) fails to satisfy the
heightened standard set forth by Fed. R. Civ. P. 9(b) and
is due to be dismissed.

**8. Placed in False Light (BONYM, SLS)**

With regard to Plaintiffs' assertion that Defendants,
BONYM and SLS, placed them in false light, the Complaint
states as follows:

> 61. In association with the servicing of the
> loan account Defendants held Jacksons up in a
> false light and *made undesirable and negative
> character and credit reputation remarks on or
> about the Jacksons* by either speaking or writing
> undesirable and negative character and reputation
> remarks about Jacksons which was offensive,
> untrue, and inaccurate, and which alleged
> Jacksons was behind on his debt serviced by
> Defendants, has a bad debt with Defendants.
>
> […]
>
> 63. Defendants held Jacksons up in a false light
> and *made undesirable and negative and credit
> reputation remarks on or about Jacksons in the
> national credit reporting media and to his* [sic]
> *homeowner insurance carrier*. Defendants provided
> this false information to third parties.

(Doc. 17 at 11-12)(emphasis added). Thus, Plaintiffs have asserted Defendants placed them in false light when they (1) made statements regarding their credit reputation in the credit reporting media or (2) made statements to Plaintiffs' insurance carrier. *Id*. Defendants, SLS and BONYM, argue Plaintiffs' claim fails because they have not sufficiently pled that Defendants gave "publicity" to the allegedly false statements. (Doc. 19 at 20-21). The Alabama Supreme Court has defined "false light" invasion of privacy as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.' "

*Butler v. Town of Argo*, 871 So.2d 1, 12 (Ala. 2003) (*quoting Schifano v. Greene County Greyhound Park, Inc.*, 624 So.2d 178, 180 (Ala.1993).

> "[G]iving publicity" is "making a 'matter ... public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.' "Publicity is a concept more difficult to prove than [mere] publication," which is an element of a defamation claim. The "publicity" element is not

satisfied by the " 'communicat[ion of] a fact ... to a
single person or even to a small group of persons.' "

*Regions Bank v. Plott*, 897 So.2d 239, 245 (Ala. 2004).

In the present action, Plaintiffs have not stated any
facts from which it could be determined that Defendants
"gave publicity" to the statements allegedly made by them
referring to Plaintiffs to either the credit media or their
insurance carrier.  Plaintiffs have not specified what
statements were made, how often they were made, to whom
they were made, or any other details from which it could be
inferred that such statements were either "highly
offensive" or have become public knowledge due to the
actions of Defendants.  Plaintiffs additionally made no
effort to respond to Defendants' arguments to the
contrary.[17]  As a result, Plaintiffs' false light claim
(count eight) fails as a matter of law.

### 9.   Defamation, Libel, Slander (BONYM, SLS)

According to Plaintiffs, "[t]he Defendant willfully,
wantonly, recklessly and/or maliciously published and
communicated false and defamatory statements regarding the
Plaintiff and said statements have subjected the Plaintiff
to the denial of credit by third parties, resulted in
homeowner's insurance cancellation and harmed the

---

[17]*See* FN 12.

Plaintiff's [sic] credit reputation." (Doc. 17 at 13).
Plaintiffs further contend that as a result of Defendants'
actions they were "caused to suffer injury to their
reputation in the eyes of the community."  (Doc. 17 at 15).
Defendants contend that these claims are due to be
dismissed because Plaintiffs have not sufficiently pled
special damages. (Doc. 19 at 21-22).  In response,
Plaintiffs argue that the claim should stand as Plaintiffs
have alleged (1) they were not in default and (2)
Defendant(s) published in a newspaper that Plaintiffs were
in default. (Doc. 30 at 20).

> The elements of a cause of action for defamation are:
>
> 1) a false and defamatory statement concerning the
> plaintiff; 2) an unprivileged communication of that
> statement to a third party; 3) fault amounting at
> least to negligence on the part of the defendant; and
> 4) either actionability of the statement irrespective
> of special harm [(actionable per se)] or the existence
> of special harm caused by the publication of the
> statement [(actionable per quod)].

*McCaig v. Talladega Publ'g Co.*, 544 So.2d 875, 877
(Ala.1989).  There are two types of defamation: libel,
which involves the use of print media to publish the
defamatory comment, and slander, which involves the oral
expression of a defamatory comment.  *Blevins v. W.F. Barnes
Corp.,* 768 So.2d 386, 390 (Ala. Civ. App. 1999).

> In cases of libel, if the language used exposes the
> plaintiff to public ridicule or contempt, though it

> does not embody an accusation of crime, the law
> presumes damage to the reputation, and pronounces it
> actionable per se. [To] constitute slander actionable
> per se, there must be an imputation of an indictable
> offense involving infamy or moral turpitude....
>
> This distinction, however, does not deny the right to
> maintain an action for slander founded on oral
> malicious defamation subjecting the plaintiff to
> disgrace, ridicule, odium, or contempt, though it
> falls short of imputing the commission of such crime
> or misdemeanor. In such case the law pronounces the
> words actionable per quod only, and the plaintiff must
> allege and prove special damages as an element of the
> cause of action.

*Marion v. Davis*, 217 Ala. 16, 18, 114 So. 357, 359 (1927).

"Special damages are the material harms that are the

intended result or natural consequence of the slanderous

statement, and the general rule is that they are limited to

'material loss capable of being measured in money.'"

*Butler v. Town of Argo*, 871 So.2d 1, 18(Ala. 2003) (*quoting*

*Shook v. St. Bede School*, 74 F.Supp.2d 1172, 1180

(M.D.Ala.1999))(citations omitted).

Plaintiffs allege a claim of libel based on the

printing of the foreclosure sale in the newspaper and a

claim for slander based on communications made to "credit

reporting agencies and/or third parties" relating to the

foreclosure of Plaintiff's home.  (Doc. 17 at 13).

As an initial matter, for the reasons stated

previously herein, Plaintiffs' claims of slander based on

the reporting of false information to credit agencies is

preempted by the FCRA.  Second, to the extent that
Plaintiffs have asserted a claim of libel against SLS
(servicer), the Complaint provides no factual support that
SLS conducted a foreclosure sale, or advertised the
foreclosure proceedings.  As a result, Plaintiffs' libel
claim against SLS, fails as a matter of law.[18]  Thus, the
only remaining ostensible claim is one for libel against
BONYM based on its publishing of the foreclosure notice in
the newspaper.[19]  Once again, Plaintiffs' Complaint is not
an example of clarity and the exact content of the
allegedly defamatory statement has not been provided.
Nevertheless, in order to proceed, Plaintiffs must provide
facts supporting the assertion that the publication made
was either (1) actionable irrespective of special harm or
(2) resulted in special harm.  Plaintiffs' Complaint does
neither.  Instead, Plaintiffs only stated that Defendants
published and communicated false and defamatory statements
regarding Plaintiff and that such communications "harmed
the reputation of the Jacksons and/or deterred third
persons from associating with the Jacksons". (Doc. 17 at
13).  With regard to damages, Plaintiffs additionally

---

[18] *See In re Small*, 2012 WL 2132386 (June 12, 2012) (Court dismissed
defamation claim against Defendant, mortgage servicer, where
Plaintiff's claim was based on publication of Notice of Foreclosure.)
[19] Plaintiffs' Complaint states this notice was printed in the Northport
Gazette, although this, again, appears to be a typographical error.

stated that they "were caused to suffer injury to his [sic] reputation in the community and the public and was subject to ridicule", "were caused to be injured and damaged", and that the allegedly defamatory statements "harmed the Jacksons' reputation and character" which caused them to suffer "damages to their reputation which negatively affected their credit and their business[20] causing monetary losses". (Doc. 17 at 13-15). Plaintiff did not set forth any facts that the allegedly defamatory statements were actionable irrespective of special harm or present facts showing they suffered special harm, even after Defendants moved to dismiss this claim on those grounds. As a result, Plaintiffs' claim for defamation (count nine) is due to be dismissed.

## II.  Federal Claims

### 10.  Truth in Lending Act (SLS)

Plaintiffs assert that the Defendant, SLS, violated TILA because:

> [D]efendants did not provide a proper copy of the notices required […]. The disclosure statement issued in conjunction with this consumer credit transaction

---

[20] Nowhere else in the Complaint do Plaintiffs allege that they own a business and this Court has no reason to believe that Plaintiffs owned a business that lost monetary damages.  Instead, this Court assumes that this language was copied and pasted from another document, like many sentences that appear in the Complaint, which refer to "Plaintiff", "he", "him", "counter-defendant" or "Morris", when in the present action, there are two plaintiffs, no counter-defendants, and no one named Morris.

> violated the requirements of Truth in Lending and
> Regulation Z in the following and other respects:
> (a). By failing to provide the required disclosures
> prior to consummation of the transaction […] (b). By
> failing to make required disclosures clearly and
> conspicuously in writing […](c). By failing to include
> in the finance charge certain charges imposed by
> defendant payable by plaintiff incident to the
> extension of credit […], thus improperly disclosing
> the finance charge […]. Such amounts include, but are
> not limited to the attorney fees and late fees […].

(Doc. 17 at 16).  SLS contends Plaintiff's claim is due to
be dismissed because SLS is not a "creditor" as defined by
TILA.  (Doc. 19 at 23).

TILA is a remedial consumer protection statute
designed to "assure a meaningful disclosure of credit terms
so that the consumer will be able to compare more readily
the various credit terms available to him and avoid the
uninformed use of credit, and to protect the consumer
against inaccurate and unfair credit billing and credit
card practices." 15 U.S.C. § 1601(a).  Under TILA, a
consumer has a private right of action against "any
creditor who fails to comply with any requirement imposed
under this part ...." 15 U.S.C. § 1604(a).
By its plain language, TILA's private right of action
applies only to actions against "creditors." 15 U.S.C. §
1604(a). TILA defines the term "creditor" as follows:

> The term "creditor" refers only to a person who both
> (1) regularly extends, whether in connection with
> loans, sales of property or services, or otherwise,

consumer credit which is payable by agreement in more
than four installments or for which the payment of a
finance charge is or may be required, and (2) is the
person to whom the debt arising from the consumer
credit transaction is initially payable on the face of
the evidence of indebtedness or, if there is no such
evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). "The definition given in this sentence
is restrictive and precise, referring *only* to a person who
satisfies *both* requirements." *Cetto v. LaSalle Bank Nat'l
Ass'n*, 518 F.3d 263, 270 (4th Cir. 2008) (emphasis in
original); *see also Parker v. Potter*, 232 Fed.Appx. 861,
864 (11th Cir. 2007) (noting that a person must satisfy
both prongs of the definition in order to be considered a
creditor under TILA).

In the present action, there is no dispute that SLS
was not the original lender on Plaintiffs' Mortgage and/or
Note.  To the contrary, Plaintiffs have repeatedly
acknowledged that their mortgage was executed with First
Residential (Doc. 17 at 12) and have additionally
identified SLS as a "servicer".  (Doc. 17 at 17).
Plaintiffs' response (Doc. 30) makes a series of arguments
in support of liability based on *Khan v. Bank of New York
Mellon*, 849 F. Supp. 2d 1377 (S.D. Fla. 2012) (creditors
can be held vicariously liable for damages under TILA for a
loan servicer's failure to properly respond to a borrower's

35

request for information about the loan owner)[21].  While
Plaintiffs are correct that *Khan* and other Courts have
addressed the issue of vicarious liability with regard to
TILA and Regulation Z, such an analysis is not warranted in
the present action because Plaintiffs have not asserted a
TILA claim against a *creditor* for the actions of a
*servicer*, like those cases to which Plaintiff cites.
Instead, Plaintiffs have only asserted a TILA violation
against SLS (the servicer) and have failed to offer any
alternative theory under which a servicer, alone, is liable
for TILA violations.  Plaintiffs have, likewise, not
offered any other alternative reasoning by which SLS could
viably be defined as a "creditor" such that it would be
subject to liability under TILA. Rather, based on the facts
of this action, Plaintiffs have not met their burden to
sustain a cause of action against SLS for a TILA violation

---

[21] Of note, *Khan*, and those decisions of other Courts on which *Khan*
relied, specifically address whether vicarious liability exists when a
servicer fails to provide information pursuant to 15 U.S.C.A §
1641(f)(2) ([…] Upon written request by the obligor, the *servicer shall*
provide the obligor, to the best knowledge of the servicer, with the
name, address, and telephone number of the owner of the obligation or
the master servicer of the obligation.)  Thus, *Khan* does not stand for
the conclusion that a creditor of a loan is vicariously liable for the
actions of a servicer for any and/or all violations of TILA and to the
extent that Plaintiffs are attempting to make such a connection, this
Court does not find Plaintiffs' argument to be compelling. Nonetheless,
because in the present action Plaintiffs have not asserted a claim
against the creditor for the actions of the servicer, a full analysis
of which actions a creditor may or may not be vicariously liable for is
not warranted.

because SLS is not a creditor.  As a result, count ten is due to be dismissed against SLS.

**11.  Real Estate Settlement Procedures Act (SLS)**

Plaintiffs contend that SLS is liable for violations of RESPA.  More specifically, Plaintiffs' Complaint, states as follows:

> 92.  Defendant, SLS, is a loan "servicer" of the Plaintiff's "federally related mortgage loan" [...].
>
> 93. The Jacksons made a Qualified Written Request pursuant to RESPA to Defendants on October 29, 2015 and December 15, 2015 which was sent by certified mail.  It was signed for by Defendants acknowledging receipt of the QWR.  Defendants never acknowledged receipt of the QWR request and never responded to it. Defendants' failure to acknowledge and properly respond to the QWR request is a violation of RESPA or the Dodd-Frank Act.  Because of said violations of said acts, the Jacksons were damaged because they were not informed of the information regarding their loan. Because the Defendants failed to give this information to the Jacksons, they were not able to stop the foreclosure on their home. [...]

(Doc. 17 at 17-18).  Defendant, SLS, argues this claim is due to be dismissed either because (1) Plaintiffs have failed to sufficiently allege that they submitted a conforming QWR to SLS, or (2) Plaintiff failed to sufficiently allege that they suffered actual damages which were causally linked to the RESPA violation.  In response, Plaintiffs make two singular statements with regard to the grounds for dismissal asserted by SLS.  Namely, that "Plaintiff's [sic] RESPA claims survive [...] against SLS to

37

the extent Plaintiff's [sic] demand statutory damages" and
"the RESPA claims against […] SLS are due to survive the
motion to dismiss."  (Doc. 30 at 23, 24).[22]

To state a RESPA claim for failure to respond to a
qualified written request ("QWR"), a plaintiff must allege:
"(1) the defendant is a loan servicer under the statute;
(2) the plaintiff sent a [QWR] consistent with the
requirements of the statute; (3) the defendant failed to
respond adequately within the statutorily required days;
and (4) the plaintiff has suffered actual or statutory
damages." *Miranda v. Ocwen Loan Servicing, LLC*, 2015 WL
7767209 (S.D.Fla. Dec. 2, 2015) *quoting Correa v. BAC Home
Loans Serv. LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL
1176701, at *6 (M.D.Fla. Apr. 9, 2012) (citing *Frazile v.
EMC Mortg. Corp.*, 382 Fed.Appx. 833, 836 (11th Cir.2010)).
"[A] QWR is written correspondence to the servicer that
'(i) includes, or otherwise enables the servicer to
identify, the name and account of the borrower; and (ii)
includes a statement of the reasons for the belief of the
borrower, to the extent applicable, that the account is in
error or provides sufficient detail to the servicer

---

[22] The remainder of Plaintiffs' argument in support of denying the
motion to dismiss explains that BONYM is not a "servicer", but is,
nevertheless, vicariously liable for the actions of SLS.  However,
Plaintiffs' Complaint does not assert a claim for RESPA violations
against BONYM, and, therefore, whether BONYM is vicariously liable is
of no consequence in the present action.

regarding other information sought by the borrower.'" *Bush*,
2016 WL 324993 at *4 *quoting* 12 U.S.C. § 2605(e)(1)(B).
Section 2605(e) requires a servicer of a federally related
mortgage loan to provide a written response to a borrower's
QWR, acknowledging receipt of the request, within 20 days,
and to take further action or provide explanation or
clarification within 60 days. 12 U.S.C. § 2605(e)(1)(A),
(2).

     In the present action, there is no dispute that SLS is
a servicer.  Therefore, the next inquiry is whether
Plaintiffs have pled facts supporting that they submitted a
QWR consistent with the statutory requirements to SLS.
This Court finds that they have not.  While Plaintiffs have
stated that they submitted QWRs to SLS on October 29, 2015,
and December 15, 2015, there is simply a complete lack of
factual support that the QWRs met the statutory
requirements.  In fact, Plaintiffs wholly fail to identify
any of the alleged content of these QWRs such that this
Court could determine that Plaintiffs' request contained
the detailed information required by the statute, even
after Defendants raised the issue in their Motion to
Dismiss on those grounds.[23]  As a result, this Court finds
that Plaintiffs have not sufficiently pled facts to sustain

---

[23] See FN 12.

their RESPA claim (count eleven) and the same is due to be dismissed.[24]

### 12. **Fair Credit Reporting Act (SLS)**

Plaintiffs assert that SLS violated the FCRA by "inaccurately reporting that the Jacksons were delinquent in their mortgage loan and in default" after Plaintiffs informed it of the inaccurate reporting.  Plaintiffs also assert that they "contacted the credit national bureaus and informed them of the inaccurate information and disputed same" but "the credit reports were never changed because Defendants kept reporting the account as delinquent and in foreclosure."  (Doc. 17 at 18).  SLS has asserted this claim is due to be dismissed because Plaintiffs failed to allege that SLS received notice of Plaintiffs' dispute from a Credit Reporting Agency ("CRA"). (Doc. 19 at 26-27; Doc. 33 at 13.)

---

[24] Additionally, even assuming that Plaintiffs have sufficiently pled that they submitted a QWR in compliance with the statutory requirement, Plaintiffs still have not sufficiently pled damages.  "A borrower may recover 'actual damages' if the loan servicer fails to comply with these provisions." *Sellers v. GMAC Mortg. Group, Inc.*, 2008 WL 4768867, *2 (11th Cir. Nov. 3, 2008). A borrower's recovery is not limited to actual damages; rather, the statute provides for award of "an amount equal to the sum of ... any actual damages to the borrower as a result of the failure; and ... any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1)(A)-(B). In the present action, Plaintiffs have alleged that their RESPA claim survives against SLS to the extent that they seek statutory damages, but they have failed to allege a "pattern or practice of noncompliance" sufficient to support eligibility for statutory damages under § 2605(f).

"[T]he FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies." *Chipka v. Bank of Am.*, 355 Fed.Appx. 380, 382 (11th Cir. 2009). "The FCRA imposes two separate duties on furnishers. First, [15 U.S.C.] § 1681s-2(a) requires furnishers to submit accurate information to [credit reporting agencies]. Second, § 1681s-2(b) requires furnishers to investigate and respond promptly to notices of [consumer] disputes." *Green v. RBS Nat'l Bank*, 288 Fed.Appx. 641, 642 (11th Cir. 2008). However, the FCRA does not provide a private right of action to redress violations of § 1681s-2(a). *Id.; see also Peart v. Shippie*, 345 Fed.Appx. 384, 386 (11th Cir. 2009) ("[T]he statute explicitly bars private suits for violations of [§ 1681s-2(a)].""). The FCRA does provide a private right of action for violations of § 1681s-2(b), "but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency." *Peart*, 345 Fed.Appx. at 386; Green, 288 Fed.Appx. at 642.

In the present action, Plaintiffs have failed to plead any facts to support that SLS was notified of a dispute

from a CRA, even after the issue was raised by Defendants.[25]
To the contrary, Plaintiffs specifically state that they
themselves reported the insufficient information to SLS and
to the CRAs without making any connection such that this
Court could find that SLS was notified by a CRA.  As a
result, Plaintiffs have not met their burden and their
claim against SLS for violations of the FCRA is due to be
dismissed. *See Rice v. J.P. Morgan Chase Bank NA*, 2014 WL
3889472, at *6 (N.D. Ala. August 5, 2014)(dismissing the
plaintiff's FCRA claim where the plaintiff failed to plead
any facts to suggest that the credit bureaus contacted the
furnisher regarding the dispute).[26]

### 13.  Fair Debt Collection Practices Act (SLS)

Plaintiffs allege that SLS violated the FDCPA by
misrepresenting the "character, amount, or legal status of
the debt by inflating the debt owed, including
misrepresenting the escrow amount" in the communication SLS
sent to Plaintiffs.  (Doc. 17 at 22; Doc. 30 at 28).

To state a claim under the FDCPA, a plaintiff must
establish, among other things, that the defendant is a
"debt collector." *Reese v. Ellis, Painter, Ratterree &
Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). The FDCPA

---

[25] *See* FN 12.
[26] Of note, the Plaintiff in *Rice* was represented by counsel for
Plaintiffs in the present action.

defines a debt collector as "any person who uses any
instrumentality of interstate commerce or the mails in any
business the principal purpose of which is the collection
of any debts, or who regularly collects or attempts to
collect, directly or indirectly, debts owed or due or
asserted to be owed or due another." 15 U.S.C. § 1692a(6).
Expressly excluded from this definition are persons
"collecting or attempting to collect any debt owed or due
or asserted to be owed or due another to the extent such
activity ... concerns a debt which was not in default at
the time it was obtained by such persons." 15 U.S.C. §
1692a(6)(F). Furthermore, the FDCPA's legislative history
suggests that a mortgagee and its assignee, including
mortgage servicing companies, are not debt collectors under
the FDCPA when the debt was not in default at the time it
was assigned. *See Perry v. Stewart Title Co.*, 756 F.2d
1197, 1208 (5th Cir. 1985) (citing S. Rep. No. 95-382, at 3
(1977), 1977 U.S.C.C.A.N. 1695, 1698).

Relying on § 1692a(6)(F), Plaintiffs assert that SLS is
a "debt collector" under the FDCPA as when it began
servicing the loan, the loan was in default and it was
serviced as a defaulted loan.  (Doc. 17 at 20).  SLS argues
Plaintiffs have failed to state a claim because they have

not sufficiently pled that SLS is a "debt collector". (Doc. 19 at 28).

First, Plaintiffs have not sufficiently pled facts to show that their loan was in default at the time that SLS began collecting the debt owed on their loan.  While Plaintiffs have asserted this to be true in a conclusory fashion, the Complaint fails to offer any facts to show when the debt was defaulted[27] or when SLS began servicing Plaintiffs' account.  Nevertheless, assuming Plaintiffs' conclusory assertions are true, there is still a lack of factual content from which it could be determined that SLS otherwise meets the statutory definition of a "debt collector".  While the status of the debt is a consideration of whether a party is excluded under the FDCPA, the mere fact that a loan was in default is not determinative of whether a party is a "debt collector".  "In contrast to the exclusion at § 1692a(6)(F)(iii), the statutory definition of "debt collector" applies without regard to the default status of the underlying debt." *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1314 (11th Cir. 2015).  Thus, in the instant action, in order to avoid dismissal, Plaintiffs must plead facts that

---

[27] In fact, Plaintiffs have continuously asserted that their loan was not in default.

allow the court to draw the reasonable inference that SLS is a "debt collector" under the FDCPA (as defined herein above) and Plaintiffs have simply not met this requirement. To the contrary, the Complaint offers no facts to suggest that SLS either (1) uses interstate commerce to conduct a business whose principal purpose is the collection of any debts, or (2) regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6).  Plaintiffs have not attempted to assert facts in support of either of these requirements, even after the issue was raised by Defendants[28] and, therefore, the status of Plaintiffs' loan at the time SLS began servicing the loan is not relevant to this Court's analysis.

Because Plaintiffs have failed to allege facts demonstrating that SLS is a "debt collector" within the meaning of the FDCPA, their FDCPA claim (count thirteen) is subject to dismissal.

### 14.  Telephone Consumer Protection Act (SLS)

The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(A)(iii), provides that "[i]t shall be unlawful for any person ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the

---

[28] *See* FN 12.

called party) using any automatic telephone dialing system

... to any telephone number assigned to a ... cellular

telephone service." In order to prevail on a TCPA claim for

a violation of 47 U.S.C. § 227(b)(1)(A)(iii), a plaintiff

must show that the defendant: (1) made a call using an

automatic telephone dialing system; (2) the call was not

made for emergency purposes; (3) the call was made without

the plaintiff's prior express consent; and (4) the call was

made to a telephone number assigned to the plaintiff's

cellular telephone service. *See Walker v. Transworld*

*Systems, Inc.*, 2015 WL 631390, at *2 (M.D.Fla. Feb.13,

2015); *Lee v. Gulf Coast Collection Bureau, Inc.*, 2014 WL

6978760, at *2 (M.D.Fla. Dec.10, 2014).

Plaintiffs' Complaint states as follows:

118. The Defendants used automatic telephone dialing
systems to call the Plaintiffs' cell phones numerous
times from June 2013 until December 2015.  The
Plaintiffs have never given the Defendant permission
to call their cell phones with automated dialing
systems.  As a consequence of said acts, the Defendant
has violated the TCPA and is liable for damages
pursuant to federal law.[29]

(Doc. 17 at 25).  Like many other of Plaintiffs' claims,

this claim too, appears to simply mirror the statutory

language of the TCPA, while offering minimal factual

---

[29] Plaintiffs additionally state that their TCPA claim is further
supported by "[t]he acts and omissions of Defendant as more
specifically stated in the facts."  However, this Court was unable to
identify any "facts" to which Plaintiffs are referring.

support.  While this Court is aware that, in the instant circumstance, Plaintiffs' seemingly boilerplate assertions are also factual assertions, this Court is not persuaded that Plaintiffs have provided enough factual content to deem their claim plausible on its face.  *See Duran v. Wells Fargo Bank*, N.A., 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012)(Plaintiff who alleged in a conclusory manner that Defendant placed "many" non-emergency calls to his cellular phone did not sufficiently allege that Defendant used an automatic telephone dialing system or artificial or prerecorded voice to make any phone calls to his cellular telephone.) Furthermore, Plaintiffs wholly fail to present any argument or supporting case law as to why their pleading is not insufficient after SLS raised the issue. [30] Plaintiffs made no effort to present any facts supporting the conclusory allegation that such calls were from automated telephone dialing systems, i.e., to which numbers they were placed, the owner of said numbers, the amount of times the calls were placed, the dates on which they were made, or the contents of said calls, such that Plaintiffs' claim could rise above the speculative level.  As a result, Plaintiffs' claim for violation of the TCPA (count fourteen) is due to be dismissed.

---

[30] *See* FN 12.

### 15.  Equal Protection Opportunity Act (SLS)

Plaintiffs claim that SLS violated § 1691(a)(1) of the EPOA based on Plaintiffs' receipt of a notice which stated "due to the default under the terms of the mortgage or deed of trust, the entire balance is due and payable." (Doc. 17 at 26).  Plaintiffs contend they attempted to determine whether SLS's notices represented SLS's termination of the loan modification agreement entered in to on August 29, 2013,[31] and concluded that it did, which revoked the Plaintiffs' credit for purposes of § 1691(d)(6).  (*Id*). Plaintiffs further allege that these actions were adverse to them and that SLS failed to send an adverse action notice to them in compliance with ECOA's notice requirements.  SLS argues this claim is due to be dismissed because SLS is not a "creditor".[32]  (Doc. 19 at 31).

15 U.S.C. § 1691(a)(1) states in pertinent part as follows:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction--
>
> > **(1)** on the basis of race, color, religion, national origin, sex or marital status, or age

---

[31] This is the first and only mention of a loan modification agreement in this action.

[32] Plaintiffs' response incorrectly classifies SLS' argument as one based on the contention that Plaintiffs failed to allege "that they were victims of discrimination." (Doc. 30 at 30). However, a plain reading of Defendants' motion indicates otherwise and, therefore, this Court will not address this allegation.

> (provided the applicant has the capacity to
> contract);

In order to find SLS liable, Plaintiffs must show that SLS was "(1) a creditor, (2) who took adverse action with respect to plaintiffs' credit request and (3) failed to provide written notification of its reasons for the adverse action." *Hunter v. Bev Smith Ford, LLC*, 2008 WL 1925265, at *6 (S.D. Fla. April 29, 2008) *quoting Madrigal v. Kline Oldsmobile, Inc.*, 423 F.3d 819, 822 (8th Cir.2005). The statute defines a creditor as an entity that "regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; *or any* assignee of an original creditor who participates in the decision to extend renew, or continue credit." § 1691a(e)

In the present action, Plaintiffs have not asserted any facts from which it could be determined that SLS is a "creditor" as defined by the ECOA. Instead, Plaintiffs' Complaint repeatedly refers to SLS as a servicer of Plaintiffs' account. There is a lack of factual support that SLS is in the business of extending, renewing, or continuing credit or that it is an assignee of the original creditor who participates in the decision to extend, renew, or continue credit. Plaintiffs made no such assertions in

their Complaint and failed to rebut in any fashion that SLS
was, in fact, a creditor under the EOCA in their Response
(Doc. 30).[33]   Therefore, Plaintiffs' claim under the EOCA is
due to be dismissed.

### 16.   Declaratory Relief (All Defendants)

Plaintiffs seek (1) an Order declaring that they are
not in default of their mortgage agreement and declaring
the notice of default is null and void 2) an order
declaring that Defendants have no right or authority to
foreclose on the Jacksons' property and (3) an Order
prohibiting Defendants from foreclosing on the Jacksons'
property. (Doc. 17 at 26-27).   Defendants assert this
request is due to be denied on several grounds including
(1) because Plaintiffs have not asserted a viable claim
based on the allegations of their Complaint, (2) because
Plaintiffs have not shown a likelihood of success on the
merits, and (3) because the subject property has already
been sold at foreclosure.   (Doc. 19 at 32).   In response,
Plaintiffs simply point to the language of the Mortgage
which provides that Plaintiff has a right to seek
declaratory relief.   (Doc. 19-1 at ¶ 22).

Regardless of whether the Mortgage allows for
Plaintiffs to bring suit, Plaintiffs have not presented any

---

[33] *See* FN 12.

facts, or even attempted to present facts to show that declaratory or injunctive relief is warranted. "To obtain a permanent or preliminary injunction, the [Plaintiffs] must show either a likelihood of, or actual, success on the merits." *Crespo v. Caldwell Banker Mortg.*, 599 F.App'x 868, 873 (11th Cir. 2014). Based on the analysis herein above Plaintiffs have not met their burden. Likewise, because they failed to state a valid claim, declaratory relief cannot be obtained. (*Id.* at 873-74)(citations omitted). Furthermore, an injunction is not proper in the instant action because the foreclosure sale of Plaintiffs' residence has already taken place. (*Id. at 874).*

CONCLUSION

For the reasons set forth herein above, it is recommended that Defendants' Motion to Dismiss be granted pursuant to Rule 12(b)(6) for failure to state a claim against SLS, BONYM, and MERS as follows:

Counts one, two, three, four, five, eight, and nine dismissed against Defendants, SLS and BONYM. Counts six, seven, and sixteen dismissed against Defendants, SLS, BONYM, and MERS. Counts ten, eleven, twelve, thirteen, fourteen, and fifteen dismissed against SLS, resulting in this action being dismissed in its entirety against SLS, BONYM, and MERS. This action

remains pending against BANA as to Counts six and
sixteen.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be
served on all parties in the manner provided by law. Any
party who objects to this recommendation or anything in it
must, within fourteen (14) days of the date of service of
this document, file specific written objections with the
Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1);
Fed.R.Civ.P. 72(b); S.D. Ala. L.R. 72(c).  The parties should
note that under Eleventh Circuit Rule 3-1, "[a] party
failing to object to a magistrate judge's findings or
recommendations contained in a report and recommendation in
accordance with the provisions of 28 U.S.C. § 636(b)(1)
waives the right to challenge on appeal the district
court's order based on unobjected-to factual and legal
conclusions if the party was informed of the time period
for objecting and the consequences on appeal for failing to
object. In the absence of a proper objection, however, the
court may review on appeal for plain error if necessary in
the interests of justice." 11th Cir. R. 3-1.  In order to
be specific, an objection must identify the specific
finding or recommendation to which objection is made, state
the basis for the objection, and specify the place in the

Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 19th day of July, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE